IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| MONEE HOSPITALITY, INC., ) | |
| ) | Case No. 13-04100 |
| Debtors. ) | Jointly Administered |
| ) | Hon. Jacqueline P. Cox |

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

This matter coming to be heard upon the Motion of Monee Hospitality, Inc. (the "**Debtor**") for a Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "**Motion**"), pursuant to sections 361, 363 and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"); the Court having determined that the interim relief requested in the Motion is in the best interest of the Debtor, its estate, its creditors and other parties-in-interest; it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and upon the record herein, after due deliberation thereon, and good and sufficient cause appearing:

THE DEBTOR AND UNITED CENTRAL BANK (the "**Bank**") STIPULATE THAT:

A. The Debtor owns a parcel or real property located at Lot 1 in Friendship Hotels Subdivision, Interstate 57, Monee, Illinois a/k/a 25640 S. Friendship Drive, Monee, Illinois 60449 (the "**Property**"), upon which the Debtor operates a Red Roof Inn hotel business. The Bank holds a perfected first mortgage against the Property and substantially all of the Debtor's personal property to secure repayment of a loan to the Debtor in the original principal amount of $2,418,750.00.

B.      The Debtor failed to pay the loan and the Bank filed a foreclosure complaint against the Debtor.

C.      On January 10, 2013, a Judgment of Foreclosure and Sale (the "**Judgment Order**") was entered by the state court, in the amount of $2,711,191.52 as of March 6, 2012, with a per diem increase of $879.05 thereafter (the "**Judgment Amount**"). The Judgment Order also allows for the recovery of attorneys' fees, costs, and expenses under the terms of the loan documents.

D.      On February 1, 2013 (the "**Petition Date**"), the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

E.      As of the Petition Date, the Bank has first priority liens as to the Property.

F.      The Bank is entitled to adequate protection of its interests in the Collateral (as defined herein).

G.      On February 8, 2013, the Bank filed a Motion for Relief from Stay (the "**Stay Motion**"). The Debtor and the Bank have stipulated to and agreed to an agreed order, resolving the Stay Motion (the "**Agreed Order**").

H.      On February 22, 2013, the Court entered an order granting the interim use of cash collateral through March 14, 2013 and ordering the Debtor to make adequate protection payments to the Bank.

I.      The parties have consented to the terms of this Order.

J.      Good cause exists for immediate approval of this Order.

It is hereby FOUND, DETERMINED, ORDERED and ADJUDGED that:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Bank has a valid and allowed claim against the Debtor in the amount not less than the Judgment Amount, which totals $3,003,036.12 as of the Petition Date (the "Agreed Bank Claim") and the Bank asserts an additional claim of $31,410.61 in additional real estate taxes paid, $29,517.04 in attorneys' fees, $16,000 in appraisal fees, and $138.00 in other fees, totaling $77,065.65 (the "Additional Claim Amount"). The Debtor shall have until March 20, 2013 to file any objection to the Additional Claim Amount ("Claim Objection Deadline") and, if the Debtor does not file an objection with this Court to Additional Claim Amount on or before the Claim Objection Deadline, the Additional Claim Amount shall be valid and allowed. The Agreed Bank Claim, plus the allowed amount of the Additional Claim Amount shall be referenced herein as the "Secured Claim." The Secured Claim is secured by a valid, proper, and recorded mortgage on the Property, a copy of which is attached to the Motion (the "Mortgage"). Pursuant to the Mortgage and a related financing statement filed with the Secretary of State of Illinois, the Secured Claim is also secured by a security interest in substantially all of the personal property of the Debtor, including but not limited to the proceeds, cash, accounts receivable, deposit accounts, inventory, equipment, general intangibles, records and contracts of the Debtor (the "Personal Property" and with the Property, the "Collateral").

3. The Bank shall have the right, in its sole discretion, to hire a financial advisor to audit the Debtor's books and records and the Collateral. The Debtor must allow, no less than once per week, the financial advisor or other agent designated by the Bank to audit or review the Debtor's financial books and records, and to conduct a reasonable inspection of the Debtor's premises. The Debtor agrees to allow the Bank's financial advisor or agent full and complete access to the Property, the Collateral, and the Debtor's books and records, in order perform

weekly audits for the Bank of the Collateral.

4. The Debtor must make a provisional monthly adequate protection payment to the Bank on or before the 1st day of each month in the amount of $11,000 (the "Adequate Protection Payment"). The Debtor must comply with all of its obligations under the loan agreements with the Bank, including paying all taxes, insurance and maintenance of the Collateral.

5. As part of and in reliance on the terms of the Agreed Order relating to the sale of the Collateral, the Bank has agreed to the use of its cash collateral, as limited by this Order.

6. From and after the date of this Order through and including July 1, 2013, the Debtor shall be, and hereby is, authorized to use Cash Collateral. For the purposes of this Order, "Cash Collateral" shall consist of all assets of the Debtor's cash currently on deposit in the Debtor's bank accounts and in possession of the Debtor and proceeds from all of the Collateral, on the terms and conditions set forth herein; provided, however, that the Debtor is only authorized and entitled to use such Cash Collateral to satisfy those expenses in those amounts as set forth on the monthly budget attached to this Order as Exhibit A and incorporated herein by reference, as such budget may be amended from time to time upon approval by the Bank (the "Budget").

7. The Debtor has granted the Bank a security interest in all of the Debtor's Collateral. The Bank perfected is interest in the Collateral by filing financing statements with the appropriate offices in a timely manner and as result thereof, the Bank has a perfected security interest in the Collateral. Notwithstanding section 552 of the Bankruptcy Code, the Bank's security interest in the Collateral shall extend post-petition in the same manner and priority as it existed pre-petition in the Collateral.

8. The Bank's consent to the Debtor's right to use the Cash Collateral and the

effectiveness of this Order are subject to the guarantors of the Bank's claim, Bharati Patel, Vijay Patel, Jagdish Patel, and Daksha Patel (collectively, the "Guarantors"), signing and filing a signed copy of the Agree Order with the Court, thereby (i) consenting to this Court's jurisdiction and providing the Bank with updated personal financial statements on or before March 14, 2013 and thereafter within 5 days of there being a material change to such personal financial statements and (ii) agreeing to toll the statute of limitations of any claims against them, or entities they control, to recover a fraudulent conveyance.

9. The Bank's continuing consent to the Debtor's right to use the Cash Collateral is subject to the following conditions:

    a. The receipt of the Adequate Protection Payment on or before the 1st day of each month;

    b. The Debtor must allow the Bank's auditor full access to its books and records, including revenue and expense reports within 48 hours of close of business on Friday of each week;

    c. The Debtor may not exceed the amounts set forth in the Budget for total weekly cash distributions by more than 10% in any given week (absent a mutual agreement between the Debtor and the Bank);

    d. The Debtor must pay when due all real estate taxes;

    e. The Debtor must pay when due without penalty all employee payroll taxes, including but not limited to Federal Unemployment Tax (FUTA), State Unemployment Tax (SUTA), Medicare, employer FICA, employee FICA, federal withholding tax, and state withholding tax;

    f. The Debtor must maintain all casualty insurance and name the Bank as a loss

payee on all policies related to property over which the Bank asserts a security interest;

g. The Debtor must maintain all liability insurance and name the Bank as an additional insured;

h. The Debtor will conduct its business in the ordinary course, as that term is used in the Bankruptcy Code;

10. The following events shall constitute events of default and will terminate the effectiveness of this Order and revoke the Debtor's right to use the Cash Collateral (absent waiver of such event of default by the Bank):

i. The Debtor fails to satisfy any condition set forth in this Order;

j. The Debtor or any of the Guarantors fail to satisfy any condition set forth in the Agreed Order;

k. The Bank does not receive the Adequate Protection Payment on or before the 1st day of each month;

l. The conversion of the Debtor's chapter 11 bankruptcy case to a bankruptcy case under chapter 7 of the Bankruptcy Code;

m. The filing by the Debtor of a motion seeking to convert its case to a case under chapter 7 of the Bankruptcy Code;

n. The appointment of a trustee in the Debtor's chapter 11 bankruptcy case;

o. The dismissal of the Debtor's chapter 11 bankruptcy case;

p. Any authorized state or federal agency ordering the Debtor to cease operations of its business;

q. The Debtor ceasing operations of its business for three consecutive business days

for any reason;

r. The Debtor violates the terms of any Order entered in this case; or

s. The occurrence of Sale Deadline.

11. The Bank is granted a replacement lien on and in all property acquired or generated post petition by the Debtor's continued operations to the same extent, validity and priority and of the same kind and nature as it would have had prior to the filing of this bankruptcy case as set forth herein, and subject to all objections and avoidance claims; but excluding all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequently appointed trustee under Sections 544 through 550, inclusive, of the Bankruptcy Code (the "Post petition Collateral"). This replacement lien in the Post petition Collateral granted to the Bank (the "Replacement Lien") is deemed to be valid, perfected and have priority relative to any other liens only to the same extent as pre petition and subject to the same objections and avoidance claims, without the need for the execution, filing or recording of any further documents or instruments, otherwise required to be executed or filed under non bankruptcy law.

12. To any extent that the Replacement Lien, the Budget and any other adequate protection provided to the Bank for the use of its Cash Collateral fails to adequately protect the Bank's interest in Cash Collateral as used under this Order, the Bank shall have a senior priority lien pursuant to the terms of Section 507(b) of the Bankruptcy Code with respect to its claims arising from such failure to adequately protect, provided that such superpriority lien which shall have priority with respect to and shall be subject only to the following: (i) expenditures made pursuant to the Budget; (ii) liens that are senior in priority to the liens of the Bank; and (iii) fees due to the United States Trustee.

13. The Debtor represents that the Budget contains all expenses which are reasonable and necessary for the administration of its assets and the preservation of the Collateral through the Sale Deadline (as defined in the Agreed Order), and therefore includes all amounts potentially chargeable to the Bank under 11 U.S.C. §506(c) that arise solely during the Budget period. Accordingly, the Debtor waives any claim against the bank under §506(c) or any other legal or equitable doctrine, including, without limitation, unjust enrichment; provided that this paragraph shall not be binding on any subsequently appointed Chapter 11 or Chapter 7 Trustee.

14. In consideration of the Bank's agreement to consent to use of Cash Collateral, the Debtor (collectively "Releasor"), release and forever discharge all claims, rights, defenses, demands, damages, actions, causes of action, costs, expenses, and suits at law or in equity, whether known or unknown (collectively, "Claims"), that the Releasor has held or now holds against the Debtor or its officers, directors, employees, agents, attorneys, accountants, affiliates, successors and assigns (collectively the "Releasees"), with respect to or in connection with the loans, the Collateral, and any act by the Releasees of any right or remedy thereunder, including without limitation, acts arising or existing before the date hereof; provided that this paragraph shall not be binding on any subsequently appointed Chapter 11 or Chapter 7 Trustee.

15. Notwithstanding anything to this order to the contrary, nothing in this Order shall be deemed to impair the rights of the United States Trustee to collect its fees due it pursuant to 28 U.S.C. § 1930.

16. Nothing in this Order is intended to be a determination of the value of Collateral purporting to secure the Bank's claimed indebtedness, or the need for additional adequate protection to the Bank.

17. The Debtor is authorized to use Cash Collateral upon the terms and conditions

contained in this Order to avoid immediate and irreparable harm to the estate.

    18.    This is a Final Order.

ENTERED: __3-14-13__               _Jacqueline P. Cox_
                                                                       U.S. Bankruptcy Judge

STIPULATED AND AGREED:

| MONEE HOSPITALITY, INC. | UNITED CENTRAL BANK |
|---|---|
| /s/ Edmund G. Urban III | /s/ Shelly A. DeRousse |
| One of its Attorneys | One of its Attorneys |
| | |
| Urban & Burt, Ltd. | Stahl Cowen Crowley Addis, LLC |
| Attorneys at Law | 55 W. Monroe Street, Suite 1200 |
| 5320 W. 159th Street, Suite 501 | Chicago, IL 60603 |
| Oak Forest, IL 60452 | 312-377-7887 |
| 708-687-5200 | |

| EXHIBIT A | | | Mar-13 | Apr-13 | May-13 | Jun-13 | Jul-13 |
|---|---|---|---|---|---|---|---|
| Income | | | | | | | |
| | ROOM REVENUE | | 46877 | 51081 | 57111 | 67420 | 90233 |
| | Total Gross Income w/ Sales & Occupancy Tax | | 54377 | 59254 | 66249 | 78207 | 104670 |
| Expense | | | | | | | |
| | Advertisement | | 200 | 200 | 200 | 200 | 200 |
| | Automobile Expense | | 150 | 150 | 150 | 150 | 150 |
| | Breakfast Supply | | 1000 | 1150 | 1500 | 1700 | 1800 |
| | CABLE TV | | 750 | 750 | 750 | 750 | 750 |
| | CAMERA SYSTEM | | 0 | 0 | 0 | 0 | 0 |
| | CARPET-CLEANING | | 0 | 0 | 0 | 0 | 0 |
| | CARPET-CORRIDOR | | 0 | 0 | 0 | 0 | 0 |
| | CASUAL LABOR | | 0 | 0 | 0 | 0 | 0 |
| | CLEANING SUPPLIES | | 33 | 33 | 33 | 33 | 33 |
| | COMPUTER SYSTEM | | 0 | 0 | 0 | 0 | 0 |
| | CONVENSION FEE | | 63 | 63 | 63 | 63 | 63 |
| | Dues and Subscriptions | | 19 | 19 | 19 | 19 | 29 |
| | Elevator Maintenance | | 200 | 200 | 200 | 200 | 200 |
| | F.FEE | | 4688 | 5108 | 5711 | 6742 | 9023 |
| | Garbage Disposal | | 225 | 225 | 225 | 225 | 225 |
| | GRASS CUTTING | | 0 | 0 | 85 | 85 | 85 |
| | Insurance | Liability Insurance | 2167 | 2167 | 2167 | 2167 | 2167 |
| | | Work Comp | 233 | 233 | 233 | 233 | 233 |
| | Internet | | 100 | 100 | 100 | 100 | 100 |
| | LAND SCAPE | | 0 | 0 | 100 | 100 | 100 |
| | Laundry Supply | | 375 | 375 | 375 | 375 | 375 |
| | Licenses and Permits | | 85 | 85 | 85 | 85 | 85 |
| | RED ROOF Property Improvement Plan | | 0 | 0 | 0 | 0 | 0 |
| | News Paper | | 75 | 75 | 75 | 75 | 75 |
| | Office Supplies | | 167 | 167 | 167 | 167 | 167 |
| | Payroll Expenses | | 12500 | 12500 | 12500 | 12500 | 12500 |
| | Pool Supply | | 188 | 188 | 188 | 188 | 188 |
| | Professional Fees | Accounting | 125 | 125 | 125 | 125 | 125 |
| | | Legal Fees | 250 | 250 | 250 | 250 | 250 |
| | REPAIR SUPPLIES | | 450 | 450 | 450 | 450 | 450 |
| | Repairs | Building Repairs | 167 | 167 | 167 | 167 | 167 |
| | | Equipment Repairs | 125 | 125 | 125 | 125 | 125 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ROOM SUPPLIES | | 1500 | 1500 | 1500 | 1500 | 1500 |
| Security Service | | 209 | 209 | 209 | 209 | 209 |
| Snow Plowing | | 125 | 125 | 0 | 0 | 0 |
| Taxes-940 | | 75 | 75 | 75 | 75 | 75 |
| Taxes-941 | | 2349 | 2349 | 2349 | 2349 | 2349 |
| Taxes-IL941 | | 493 | 493 | 493 | 493 | 493 |
| Taxes-PROPERTY | | 2500 | 2500 | 2500 | 2500 | 2500 |
| Taxes-SALES/OCCUPANCY Tax | | 7500 | 8173 | 9138 | 10787 | 14437 |
| Taxes-UNEMPLOYMENT | | 458 | 458 | 458 | 458 | 458 |
| Telephone | | 450 | 450 | 450 | 450 | 450 |
| TRAINING | | 100 | 100 | 100 | 100 | 100 |
| Travel | | 50 | 50 | 50 | 50 | 50 |
| TRAVEL COMMISION | | 200 | 200 | 200 | 200 | 200 |
| TV PURCHASE | | 0 | 0 | 0 | 0 | 0 |
| Utilities | | | | | | |
| | Electric | 1300 | 1300 | 1750 | 1800 | 2100 |
| | Water | 666 | 666 | 666 | 666 | 666 |
| | Water-SALT | 108 | 108 | 108 | 108 | 108 |
| | Gas | 700 | 650 | 600 | 450 | 450 |
| UST FEE | | 216 | 216 | 216 | 216 | 216 |
| UCB Adequate Protection Payments | | 11000 | 11000 | 11000 | 11000 | 11000 |
| | | | | | | |
| Total Expense | | 54334 | 55527 | 57905 | 60685 | 67026 |